Harry DE LA CONCHA, Plaintiff,

v.

**FORDHAM UNIVERSITY, Defendant.**

**No. 96 CIV. 2385(CBM).**

United States District Court,
S.D. New York.

May 11, 1998.

Winstone A. Maynard, New York City, for Plaintiff.

Putney Twombly Hall & Hirson, James B. McGrath III, New York City, for Defendant.

*OPINION*

MOTLEY, District Judge.

Plaintiff Harry de la Concha ("De La Concha") sued his former employer, defendant Fordham University ("Fordham"), alleging that his termination constituted discrimination on the basis of his race (Latino) and national origin (Puerto Rican). Fordham moved for summary judgment and in so doing articulated legitimate, non-discriminatory reasons for the discharge. Because de la Concha could not prove that the circumstances of his dismissal gave rise to an inference of discrimination on the basis of national origin, Fordham's motion is GRANTED as to this claim. Because de la Concha could not meet his burden of showing that Fordham's reasons for the discharge were pretextual,

Fordham's Fed.R.Civ.Proc. 56 motion is also GRANTED as to the race claim. Therefore, de la Concha's Title VII claim is DISMISSED IN ITS ENTIRETY.

## OPINION

### I. BACKGROUND

De la Concha was employed by Fordham from December 1989 to December 1995 as a locksmith in the Facilities Operations Department ("Department") in the Bronx. At the time of de la Concha's discharge, the workforce in the Facilities Operations Department was approximately one-third Latino. During plaintiff's tenure at Fordham, three individuals served as Director of the Department: Julio Vazquez (from 1990 until February, 1995); Peter Girvan, the erstwhile deputy director (February, 1995 until May, 1995); and Marco ['Marc'] Valera (May through December 1995). Once Mr. Valera assumed the position, Girvan again assumed the position of deputy director. Throughout de la Concha's employment, the Director of Personnel was Anthony Ruggiero.

As a locksmith, de la Concha was adjudged by his appraisers to be more than competent; he received positive annual reviews and several letters of commendation. Moreover, he was not without popularity among some of the other workers. After his arrest in 1992 or 1993 for carrying a concealed weapon, Fordham employees wrote letters in support of plaintiff. *See* Pre–Trial Order, 2.[1] However, even viewed in the most favorable light, de la Concha had problems with other Fordham employees. In 1990, he had an altercation with a co-worker. In 1993, there was an incident with another employee wherein a member of the Department claimed that de la Concha had threatened sexual violence against him. Plaintiff does not dispute that there was an incident and notes only that the vice president of Fordham concluded that it was not a case of sexual harassment by plaintiff against the other employee. *See* Tr. at

---

**1.** This arrest was contended by defendant and not disputed by plaintiff, who failed to provide defendant with his portion of the Pre–Trial Order or to work with defendant on this Order. Plaintiff then submitted his own Pre–Trial Order.

14.[2]

Most of the relevant events in this case occurred in 1995. In the beginning of 1995 Peter Girvan assumed the role of Acting Director of the Department. Girvan employed racially offensive terminology, such as use of the word "spic" to describe Latinos. In May 1995, the directorship was assumed by Marc Valera.

In September 1995, three students complained that de la Concha had entered their dorm room uninvited on three separate occasions. De la Concha denies that there were three incidents but does state that he called a student a "smart ass" or "little asshole" after an incident when de la Concha, thinking no one was home, entered the students' room to allegedly fix a lock. Tr. at 5, 47. After the incident with the students, de la Concha signed a "last chance agreement" in early October 1995 wherein he agreed that any further infraction would result in his being terminated without recourse to arbitration.

At the end of October, 1995, de la Concha was summoned by Ruggiero, the Personnel Director, to act as shop steward in a meeting regarding another employee's allegedly problematic time sheets. At the meeting, it is undisputed that de la Concha and Ruggiero had words and that Ruggiero called security to have de la Concha removed from the room. De la Concha alleges, and the court will assume for purposes of this motion, that Ruggiero hit de la Concha on the back as he shepherded him out of the room. *See, e.g.,* Pl. Pre–Trial Order, ¶ 41. However, plaintiff has put forth no compelling evidence to allow a rational juror to conclude that the incident disabled or seriously injured plaintiff. Following the incident, plaintiff filed a worker's compensation claim that was adjudged to be without merit. Plaintiff also tried to compel the police to arrest Ruggiero and, following their refusal, de la Concha brought a court action against the police department which was later dismissed.

In the wake of these and other incidents, including an incident in which plaintiff presented unauthorized locksmith invoices, plaintiff was terminated on December 13, 1995. There are no facts suggesting that plaintiff's race or national origin were mentioned or played a role in the incident with the students, the incident at the personnel meeting, or at any other time, except insofar as Peter Girvan, who was not a decision-maker in the decision to discharge plaintiff, made remarks.

De la Concha did not complain about discrimination prior to or at the time of his discharge. He did timely file a complaint with the EEOC, receiving a right-to-sue letter on February 6, 1996. Plaintiff filed his complaint with this court less than 90 days later, on March 15, 1996. The complaint only alleged federal civil rights causes of action. However, de la Concha has brought no fewer than ten causes of action against Fordham. He has alleged, under oath, three separate and distinct reasons for his termination from Fordham, aside from the national origin and race discrimination alleged in this action. De La Concha has claimed his discharge was the result of sexual orientation, union activity, and retaliation for filing a worker's compensation claim. *See* Def. Exh. 1. Summary judgment has been granted against De La Concha on two of the other actions he has brought, one action was dismissed, De La Concha has withdrawn the unfair labor practice charges, and five other actions (including this one) are ongoing. *See* Def. Exh. 8, 11, 12.

## II. CONCLUSIONS OF LAW

### A. Standard for Granting Summary Judgment

"Uncertainty as to the true state of any material fact defeats [a summary judgment] motion." *Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989). It is not the role of the trial court to weigh the evidence presented or to resolve any factual issue, but rather it is the court's job to determine whether, after the parties have conducted adequate discovery, any such issues remain to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A factual issue is unresolved

---

**2.** "Tr." refers to the summary judgment hearing the court held on April 24, 1998.

if a reasonable fact finder could determine in favor of either party. *See Anderson,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132. Moreover, [t]he court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The non-moving party may defeat the motion for summary judgment by producing sufficient facts to establish a genuine issue of material fact for trial; in other words, the opposing party must produce concrete evidence from which a reasonable jury could return a verdict in its favor. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

## B. De La Concha's Claim of Discriminatory Discharge

### 1. Plaintiff's Burden Under Title VII

In order to establish a *prima facie* case of discriminatory termination of employment under Title VII, the court must apply the familiar three-step burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–57, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), further described in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 505–512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and most recently discussed by the Second Circuit in the case of *Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997) (*en banc*).

Plaintiff must first prove by a preponderance of the evidence a *prima facie* case of racial discrimination by proving four elements: (1) membership in a protected class, (2) satisfactory performance of job duties, (3) discharge from the job, and (4) discharge occurring in circumstances giving rise to an inference of discrimination. *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997) (citations omitted). The *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Nonetheless, as the Second Circuit has stated, the plaintiff's burden of establishing a *prima facie* case has often been described as "minimal." *Fisher,* 114 F.3d at 1335 (*citing Hicks*).

Once plaintiff has established his *prima facie* case of discrimination based on race, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); *see also Hicks,* 509 U.S. at 506–507, 113 S.Ct. 2742. At this stage, the defendant "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 254– 255 and n. 8, 101 S.Ct. 1089). *See also Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (same).

"It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the *prima facie* case" and the defendant does not need to persuade the court that it was actually motivated by the proffered reason in order to undermine the plaintiff and obligate him to satisfy the burden of proof. *Fisher,* 114 F.3d at 1336.

Once defendant carries this burden of production, the *McDonnell Douglas* framework "simply drops out of the picture." *Hicks,* 509 U.S. at 510–11, 113 S.Ct. 2742; *Fisher,*

114 F.3d at 1336. "In particular, the presumption of discrimination that was raised upon a showing of the *prima facie* case no longer operates." *Fisher*, 114 F.3d at 1336.

In order to sustain his burden of persuasion at this stage, plaintiff must be afforded an opportunity to prove that the reasons articulated for the adverse decision were a pretext for discrimination. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. 1089; *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985). The plaintiff, however, must satisfy two different elements: first, that the legitimate, nondiscriminatory reason was not the true reason for the adverse employment decision, and second, that discrimination was. *Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742. Moreover, if "the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject," summary judgment could be granted on the basis of the nondiscriminatory reasons proffered by defendant. *Cronin*, 46 F.3d at 203.

## 2. The Prima Facie Case

Plaintiff unquestionably has satisfied the first prong of the *prima facie* case, namely, the demonstration that he is a member of protected classes: it is undisputed that he is Latino and Puerto Rican. It is also undisputed that de la Concha was discharged from his job; thus, the third element of the *prima facie* case is satisfied.

Taking into the account the minimal nature of de la Concha's burden at this stage, the court holds that plaintiff's submission of annual job appraisal forms for the time period of March, 1991 through March, 1995, all of which indicate that de la Concha's performance was satisfactory and often above average, has served to satisfy that his performance of job duties was satisfactory. *See* Pl. Exh. 5.

**[  ]** The fourth aspect of the *prima facie* case is that plaintiff was discharged under circumstances giving rise to an inference of discrimination on the basis of membership in a protected class. As de la Concha has alleged both national origin and race discrimination, these will be addressed separately. With respect to national origin, there is simply no evidence in the record to support de la Concha's contention that his national origin played any role with respect to his termination.[3] Plaintiff's memorandum in opposition to summary judgment makes no reference to any specific statements about or behavior toward Puerto Ricans. At oral argument, the court gave de la Concha a final opportunity to explain that he had satisfied his prima facie burden. *See* Tr. at 40–42. Although plaintiff's counsel referred to remarks about Hispanics, he said nothing about his client's national origin. Given the utter absence of any evidence from which a factfinder could draw the inference that the discharge was based on national origin discrimination, the court holds that plaintiff has failed to satisfy the his *prima facie* case with respect to discrimination based on national origin and, therefore, this cause of action is dismissed.

**[  ]** On the other hand, de la Concha has submitted evidence that his immediate supervisor, Peter Girvan, used racial slurs, such as "spic." *See* Pl. Exh. 30 at 20, 26, 32, 73. Mr. Girvan's deposition indicates that de la Concha, himself, used similar phraseology, as well as Girvan's belief that he was merely "bantering" with de la Concha by appropriating the latter's own vocabulary. However, the presence of this language provides evidence which, examined in the light most favorable to de la Concha, could lead to the inference of race discrimination. *See id.*

## 3. Fordham's Non–Discriminatory Reasons for Discharging De La Concha

It is undisputed that at the time of plaintiff's December 13, 1995 discharge, he was

---

**3.** Plaintiff did submit the affidavit of Julio Vazquez in which Mr. Vazquez states that an area of concern to him was Girvan's "occasional use of ethnic and/or racial slurs, particularly against Puerto Ricans, specifically, and Hispanics and Blacks, generally." Pl. Exh. 14. This one unspecific statement does not, especially in light of the fact that national origin arguments were not set forth in plaintiff's motion papers or at oral argument, amount to a fact which could cause a factfinder to find an inference in favor of termination based on national origin discrimination.

working under a last change agreement in which he agreed that any further infraction would result in termination. *See* Pl. Exh. 8 (memo from Ruggiero to de la Concha stating in part that "as a result of your inappropriate behavior towards three Fordham students, you are being suspended for three days... and being placed on final warning status. This is a last chance agreement which means that any violation of our rules or policies will result in your termination ...."). This agreement followed an incident in which three students filed harassment charges against plaintiff because he was said to have entered their dorm room three times uninvited and, in one instance, asked one student about his sexual preferences. Although de la Concha disputes defendant's version of events, he acknowledges an incident where he entered one student's room thinking no one was home to fix a lock and, upon encountering a student, having an exchange that resulted in de la Concha's calling the student a "smart ass." *See* Tr. at 5. Upon receiving the last chance agreement, plaintiff thanked Mr. Ruggiero for not firing him. *See* Def. Exh. 1 at 561.

A few weeks later, on October 31, 1995, de la Concha, in his capacity as a shop steward, was called to a meeting in the office of the Personnel Director, Anthony Ruggiero, in order to review some problems with the time sheets of a bargaining unit employee named Carlos Murganti. A number of people were present at this meeting, including Valera, Ruggiero's assistant, and Murganti's supervisor. Both plaintiff and defendant agree that the tension level in the meeting escalated when de la Concha asked questions of Ruggiero and, at some point, Ruggiero asked de la Concha to leave. Ruggiero and Valera ascribe the tension to de la Concha's repeated interruption of Ruggiero's questioning of Murganti; de la Concha ascribes it to Ruggiero's unwillingness to allow de la Concha to speak or make comments at all, even calm and rational ones. However, de la Concha agrees that the two had an altercation and that he told Ruggiero to "shut up." Def. Exh. 1 at 431. Ruggiero called security and ushered de la Concha out of the office.

While not disputing that security was called, de la Concha contends that Ruggiero punched him on the way out of the door. This fact is disputed. De la Concha complained to the police, who did not arrest Ruggiero, and later sued the police department in an action to compel the police to arrest Ruggiero, an action which was dismissed on October 10, 1996. De la Concha also filed a worker's compensation claim nine days after the meeting, but the State Farm Insurance Fund issued a finding of "no prima facie evidence" to support his claim. *See* Valera Aff. ¶ 30. Fordham attests that the filing of what it believes to be a false worker's comp claim was part of the reason for the dismissal. Moreover, Fordham's physician, Dr. Charles Rizzo, reported that there was no evidence of injury or bruise on plaintiff. However, in deposition testimony, Carlos Murganti stated that Ruggiero hit de la Concha as he pushed him through the door. *See* Pl. Exh. 30 at 156. Thus, for purposes of this motion, the court will assume that the meeting resulted in a heated exchange between de la Concha and Ruggiero at which Ruggiero hit de la Concha in the back as he left the room. Plaintiff alleged that this punch and shove were forceful enough to cause him to sustain a disabling injury rendering him temporarily unable to work.

However, there were, according to Fordham, numerous other reasons which prompted the dismissal, namely: (1) de la Concha's intimidation of Fordham employees, including a clerical employee whom de la Concha unsuccessfully tried to persuade to say that she had dispatched de la Concha to the students' rooms; (2) de la Concha's involvement in altercations with other employees; (3) de la Concha's presentation of unauthorized locksmith invoices; and, finally, (4) de la Concha's contention that he could not work despite a note from his own physician stating that he could return to work. *See* Def. Mem. at 13–15. As summarized in the termination letter, Fordham's articulated reasons for dismissing de la Concha were due to plaintiff's "disrupting a grievance meeting, raising his voice at the Fordham Personnel Director [Mr. Ruggiero], falsely accusing the Personnel Director of harassing him, filing a false report for Worker's Compensation benefits,

intimidating an employee by visiting her home and forcing her to sign a document, and failing to keep defendant apprised as to his whereabouts and condition and when he was expected to return to work." Pl. Exh. 9.

 In satisfying its burden of production, a defendant "need not prove that it made the wisest choice, but only that the reasons for its decisions were non-discriminatory." *Davis v. State Univ. of New York*, 802 F.2d 638, 641 (2d Cir.1986). Fordham has easily satisfied its burden of production.

#### 4. De La Concha's Inability to Show Pretext

Plaintiff can meet neither of his burdens at this stage with respect to race discrimination: he has shown no evidence which would allow a rational juror to conclude that the reasons for terminating him were either false or discriminatory. De la Concha ascribes paramount importance to the fact that Girvan employed racial slurs. However, proof of pretext cannot rest upon "statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself...." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring). The individuals who made the decision to terminate de la Concha were Marc Valera, a Cuban–American, and Anthony Ruggiero. De la Concha does not allege that these individuals used discriminatory language. There is nothing in the record to suggest that de la Concha complained of Girvan's remarks to Valera or Ruggiero. *See* Tr. at 26. De la Concha's race was indisputably not discussed or raised during the incidents involving the students, which precipitated the last change agreement, or at the October 31 meeting, which was an important factor precipitating the discharge. Moreover, it is not even clear that plaintiff himself believes the real reason for his discharge was due to race, as the numerous, distinct explanations he offers—all under oath—attests. There is no evidence which would allow a reasonable juror to find that Fordham's myriad reasons for discharging de la Concha from the Facilities Operations Department, which is one-third Latino, were false or discriminatory.

#### C. De La Concha's Claim of Harassment

As a final note, plaintiff's complaint can be read to include allegations of hostile environment racial harassment. *See* Compl. ¶ 52. Although plaintiff did not allege hostile environment in his opposition brief or raise it during the hearing, even when asked explicitly about his proof under his causes of action, the court will note briefly that plaintiff failed to allege harassment severe or pervasive enough to meet his prima facie case. He also failed to allege that the offensive remarks which were made unreasonably interfered with his performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59 (2d Cir.1992).

### III. CONCLUSION

For the reasons discussed above, defendant Fordham University's Fed.R.Civ.Proc. 56 motion for summary judgment against plaintiff Harry de la Concha is GRANTED.