Charles **MINTON**, Plaintiff,

v.

**LENOX HILL HOSPITAL,** Defendant.

No. 99 CIV. 11150(DC).

United States District Court, S.D. New York.

Aug. 27, 2001.

the Hospital subjected him to a hostile work environment because of his race. Specifically, plaintiff complains that his supervisors wrongfully credited false, racially motivated allegations made against him by employees whom he supervised, and then relied on the allegations to discharge him. Plaintiff brings these claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"). Plaintiff further claims that the Hospital's conduct constituted intentional infliction of emotional distress and breach of contract under New York law.

Defendant moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and asserts that plaintiff was dismissed for harassing other employees, not for any discriminatory reason. As set forth below, because no reasonable jury could find that defendant discharged plaintiff because of his race or that defendant subjected plaintiff to a hostile work environment, defendant's motion is granted and the complaint is dismissed, with prejudice.

## BACKGROUND

### A. *Plaintiff's Employment*

Plaintiff, an African–American male, was hired by the Hospital in 1979 to work in the histology department. (Minton Dep. at 6). During his employment at the Hospital, plaintiff earned three promotions and stellar evaluations. (*Id.* at 10, 14, 17, 23). In 1996, after the retirement of his supervisor Tia Krummins, plaintiff was promoted to supervisor of the histology department. (*Id.* at 17). In that role, plaintiff's responsibilities included payroll, scheduling, and generally overseeing the eight or nine employees in the histology depart-

Sbeglia & Shames, By Marc C. Shames, Esq., New York City, for Plaintiff.

McDermott, Will & Emery, By Terri L. Ross, Esq., New York City, for Defendant.

#### *MEMORANDUM DECISION*

CHIN, District Judge.

Plaintiff Charles Minton, an employee of defendant Lenox Hill Hospital (the "Hospital") for more than 19 years, alleges that the Hospital wrongfully terminated his employment on the basis of race, and that

ment, including lab technologists John Varghese, Mark Chmielewski, and Leyda Palma. (*Id.* at 19, 20).

Throughout plaintiff's tenure in the histology department, the Hospital employed a Human Resources Department to "address complaints of discrimination." (Bodee–Isidore Aff. ¶ 4, Exs. 1, 2).

## B. *Complaints About Plaintiff*

After plaintiff's promotion to supervisor in 1996, Varghese and Chmielewski brought complaints to the Hospital about plaintiff's performance. In January 1998, Varghese complained to Cynthia Felski, Administrative Director of the Pathology Lab, that: (1) plaintiff misappropriated overtime pay; (2) plaintiff permitted a non-supervisor to handle payroll; (3) plaintiff made derogatory remarks about employees; and (4) plaintiff failed to give notice of his absences from the office.[1] (Minton Dep. at 24–25; Varghese Aff. ¶ 4). At an ensuing meeting with Felski, plaintiff denied each of Varghese's allegations, and he was not disciplined. (Minton Dep. at 25–28; Felski Aff. ¶ 7).

In February 1998, plaintiff again met with Felski, and with Dr. Terzakis, Director of Surgical Pathology, to address complaints by Chmielewski that plaintiff had made a derogatory remark about him and that plaintiff had failed to grant him overtime for work performed. (Minton Dep. at 28–31; Felski Aff. ¶ 8). After plaintiff denied Chmielewski's allegations, Felski advised plaintiff about "the need to avoid engaging in any of the alleged actions," and she instituted a new payroll policy. (Felski Aff. ¶ 9, Ex. 1; *see* Minton Dep. at 31–32).

## C. *Other Employees' Conduct*

Both before and after his promotion to supervisor, plaintiff heard other employees in the histology department direct derogatory, racial remarks at him.[2] (Minton Dep. at 80–93). Specifically, plaintiff heard Varghese: call plaintiff a modern slave; refer to plaintiff as "Schwartzkopf Dumkopf," which plaintiff understood to mean "Stupid Blackhead"; and, prior to plaintiff's promotion to supervisor, say that the Hospital never would hire plaintiff as supervisor because he is black. (*Id.* at 85–86). Plaintiff heard Palma say more than once that the worst thing the Hospital could do is hire a black person. (*Id.* at 80). Julia Melan, another technologist in the department, heard Varghese state that if plaintiff were not black then his superiors never would have questioned him concerning overtime. (Melan Aff. ¶ 7).

There is nothing in the record to suggest that plaintiff complained about these remarks at the time they were purportedly made. Moreover, at his deposition, after describing these comments, plaintiff stated that he and Varghese were "friends," and that Palma's comments did not offend him. (Minton Dep. at 83, 84). Plaintiff also stated that the Hospital's histology lab was "the best department in New York or America," and that the employees at the Hospital "were one family." (*Id.* at 89, 117).

## D. *The Letters*

In March 1998, Varghese and Chmielewski each received letters from plaintiff's

---

1. As plaintiff had promoted Varghese to assistant supervisor by this time, Varghese was in charge of the lab when plaintiff was absent. (Minton Dep. at 20, 23, 25). As supervisor, plaintiff also promoted Palma to senior technologist. (*Id.* at 83).

2. At his deposition, plaintiff was unable to specify when the racial remarks were made. Rather, he referred to Varghese and Palma's comments as "ongoing." (Minton Dep. at 81, 84).

attorney stating that they had "made slanderous remarks about [plaintiff] to various hospital staff," and that each must make a written retraction within five days or face a lawsuit. (Felski Aff. Exs. 2, 3; *see also* Minton Dep. at 44). Shortly thereafter, Dr. Iochim, Director of Pathology, informed plaintiff that he should not have sent the letters, and that the letters had caused friction in the department. (Minton Dep. at 47–49). Iochim also obtained plaintiff's assurance that no lawsuit would be brought against Varghese or Chmielewski. (*Id.*).

### E. *The Tape Recorder*

That same month, on two separate occasions, plaintiff's tape recorder was found recording in the histology department without plaintiff present. (Minton Dep. at 51, 52; Varghese Aff. ¶ 7; *see also* Felski Aff. Ex. 4). Varghese reported discovering the tape recorder the first time, but, according to Felski, there was no real proof that plaintiff planted the tape recorder. (Felski Aff. ¶ 14).

The second time, on the morning of March 19, 1998, Varghese and Palma found a tape recorder recording in a drawer in the lab. (Minton Dep. at 55; Varghese Aff. ¶ 8; Palma Aff. ¶ 5). When plaintiff arrived at the lab, he responded that the tape recorder was his. (Minton Dep. at 55).

Later that day, plaintiff informed Palma that he was changing her hours to a later shift. (*Id.* at 59; Palma Aff. ¶ 6). Plaintiff contends that he attempted to change Palma's hours to attain better coverage of the lab. (Minton Dep. at 59). Palma contends, however, that the change was "odd" because the histology lab is under pressure to get work done in the morning. (Palma Aff. ¶ 6).

Due to the repeated complaints about plaintiff, defendant suspended plaintiff for one week with pay. (Minton Dep. at 59–60; Felski Aff. ¶ 15).

### F. *Plaintiff's Termination*

On March 30, 1998, Felski and Mary Ann Bodee–Isidore, the Hospital's Director of Employee and Labor Relations, met with plaintiff to discuss the second tape recorder incident. (Minton Dep. at 63–70; Felski Aff. ¶ 15; Bodee–Isidore Aff. ¶ 12). In an effort to account for the placement of the tape recorder, plaintiff explained that he had attempted to tape a human resources meeting and that his tape recorder is voice activated. (Minton Dep. at 66; Bodee–Isidore Aff. ¶ 13). Bodee–Isidore and Felski, however, inspected the tape recorder at their meeting with plaintiff, and, upon finding that the machine records only when the record button is pushed down, doubted the veracity of plaintiff's explanation. (Bodee–Isidore Aff. ¶ 14; Felski Aff. ¶ 16). Bodee–Isidore and Felski also informed plaintiff that changing Palma's hours so soon after the tape recorder incident appeared retaliatory. (Minton Dep. at 70). At the meeting's conclusion, Bodee–Isidore told plaintiff that he was still "under investigation." (Bodee–Isidore Aff. ¶ 15).

On March 31, 1998, Varghese and Palma met separately with Felski to discuss the second tape recorder incident. (Felski Aff. ¶ 18). Both reported that early on March 19, Palma heard plaintiff drop something in a desk drawer before leaving the lab, and then she and Varghese found the tape recorder in the drawer, running, and called security. (*Id.;* Varghese Aff. ¶ 9; Palma Aff. ¶ 8). Based on the interviews with plaintiff, Varghese, and Palma, Felski concluded that plaintiff had engaged in inappropriate conduct. (Felski Aff. ¶ 19).

Following the March 31 meeting, the Hospital received complaint letters from Varghese and Palma essentially reiterating their allegations that plaintiff had acted inappropriately as their supervisor. (Varghese Aff. Ex. 1; Palma Aff. Ex. 1).

Defendant dismissed plaintiff on April 28, 1998, informing him that he had created a hostile work environment for other employees. (Felski Aff. ¶ 22, Ex. 6; Minton Dep. at 72).

## DISCUSSION

On November 5, 1999, plaintiff commenced this employment discrimination action,[3] alleging wrongful termination and hostile work environment under Title VII, Section 1981, and the NYHRL, and alleging intentional infliction of emotional distress and breach of contract under New York law. Defendant moves for summary judgment, asserting, among other things, that plaintiff was discharged for harassing other employees and that he was not subjected to a hostile work environment. On this record, the Court agrees that no reasonable jury could conclude otherwise. Hence, defendant's motion is granted.

### I. Summary Judgment Standard

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lob-

by, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record supporting a jury verdict in the nonmoving party's favor. See id. at 249–50, 106 S.Ct. 2505.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. National Union Fire Ins. Co. v. Deloach, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." Bell-South Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

### II. Wrongful Termination

██ Plaintiff alleges that defendant discharged him because of his race. The "ultimate issue" in any employment discrimination case is "whether the plaintiff has sustained [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason' "—in other words, that there was discriminatory intent. Fields v. New York State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 119 (2d Cir.1997); see Stratton v. Department for the Aging, 132 F.3d 869, 878 (2d Cir.1997). Because no reasonable jury

---

**3.** In his complaint, plaintiff asserts that he filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), and that he commenced this action within 90 days of the EEOC's issuance of a "right to sue" letter. (Compl.¶¶ 17–19). Defendant does not dispute the timeliness of this action.

could conclude that defendant terminated plaintiff's employment for an impermissible reason, plaintiff's wrongful termination claim is dismissed.

### A. Applicable Law

■ Title VII makes it unlawful "for an employer ... to discharge any individual ... because of such individual's race." 42 U.S.C. § 2000(e)–2(a)(1).[4] In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies upon the three-step test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ct. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To establish a *prima facie* case of employment discrimination on the basis of race, a plaintiff must show "that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000); *see Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000). The burden of alleging a *prima facie* case "is a minimal one." *Graham,* 230 F.3d at 38.

Second, if the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Cruz,* 202 F.3d at 567; *Minott v. Port Auth.,* 116 F.Supp.2d 513, 519 (S.D.N.Y.2000). "This burden is one of production, not persuasion." *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's,* 509 U.S. at 510–11, 113 S.Ct. 2742; *James v. New York Racing Ass'n,* 233 F.3d 149, 156 (2d Cir.2000); *Minott,* 116 F.Supp.2d at 519. The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. *See Fields,* 115 F.3d at 120–21; *Connell v. Consolidated Edison Co.,* 109 F.Supp.2d 202, 207 (S.D.N.Y.2000).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation was false." *James,* 233 F.3d at 156. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimi-

---

4. The same standards apply to a discrimination claim under Section 1981 or the NYHRL. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (relating Title VII and Section 1981 claims); *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992) (relating Title VII and NYHRL claims); *see also Dais v. Bryant,* No. 97 Civ.2011(PKL), 2001 WL 363670, 2001 U.S. Dist. LEXIS 4497, at *19 (S.D.N.Y. Apr. 11, 2001). Thus, I analyze the Section 1981 and the NYHRL claims in conjunction with the Title VII claim.

nation on the basis of race. *See id.; Connell*, 109 F.Supp.2d at 207–08.

As the Second Circuit observed in *James:* "[T]he way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 156; *see Lapsley v. Columbia Univ.*, 999 F.Supp. 506 (S.D.N.Y.1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination).

### B. *Application*

■ Here, I assume that plaintiff has made out a *prima facie* case. Moreover, defendant has articulated a legitimate, nondiscriminatory reason for firing him, namely that plaintiff created a hostile work environment by mistreating and retaliating against other employees, including furtively placing his tape recorder to record conversations in the lab. Hence, I proceed directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination. I evaluate first plaintiff's evidence, then defendant's evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997).

### 1. *Plaintiff's Evidence*

Plaintiff's evidence of discrimination is minimal. Plaintiff asserts that: he is African–American; he worked at the Hospital for 20 years prior to 1998 without a complaint; he denied the complaints of Varghese, Chmielewski, and Palma; and

he was discharged. Plaintiff also alleges that the three employees, all of whom he supervised, made derogatory, racial remarks to him. Plaintiff fails to provide, however, any evidence from which a jury could reasonably find that he was discharged at least in part because of discrimination. As discussed below, the alleged racial remarks can only be reasonably construed as "stray" remarks: they were made by employees who reported *to* plaintiff, not by decision-makers. Indeed, at his deposition, when he was given the opportunity to describe any actions by his superiors that could be construed as racially motivated, plaintiff failed to offer any instances when Felski, Terzakis, Iochim, Bodee–Isidore, or anyone else, discriminated against him on the basis of race. (*See* Minton Dep. at 93–97, 106).

Instead, plaintiff speculates that his superiors' willingness to credit the complaints made by Varghese, Chmielewski, and Palma was racially motivated. He likewise speculates that he was treated differently than his caucasian predecessor, Krummins, as she was invited to attend formal meetings whereas plaintiff was not. Plaintiff, however, does not provide any evidence to support either of these speculations.

### 2. *Defendant's Evidence*

Defendant asserts that plaintiff was fired because he created a hostile work environment. Defendant provides the following evidence: three employees brought similar, separate complaints that plaintiff made derogatory remarks and misappropriated overtime pay; plaintiff mailed letters to two of his employees threatening to sue them and was subsequently reprimanded; plaintiff's tape recorder was found on two separate occasions, recording in the histology department in his absence, prompting a one week suspension; and,

after meeting with plaintiff, Varghese, and Palma to investigate the tape recorder incidents, Felski and Bodee–Isidore concluded that plaintiff had created a hostile work environment.

### 3. *Record as a Whole*

Considering the evidence as a whole, resolving all conflicts in the evidence, and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable jury could find that defendant dismissed plaintiff because of his race.

### a. *The Evidence Not In Dispute Favors Defendant*

The undisputed evidence supports granting defendant's motion. First, even assuming Varghese, Chmielewski, and Palma made derogatory remarks to plaintiff about African–Americans, these remarks are irrelevant because none of these employees had a role in the decision to dismiss plaintiff. This Court has explained that "proof of pretext cannot rest upon 'statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself ....'" *de la Concha v. Fordham Univ.*, 5 F.Supp.2d 188, 194 (S.D.N.Y.1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)); *see Gorley v. Metro–North Commuter R.R.*, No. 99 Civ. 3240(NRB), 2000 WL 1876909, 2000 U.S. Dist. LEXIS 18427, at *18 (S.D.N.Y. Dec. 22, 2000) ("As a general matter, stray comments are not evidence of discrimination if ... they are made by individuals without decision-making authority." (citing *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775)). In fact, as supervisor of the pathology department, plaintiff was in a position to reprimand these employees for their comments. Plaintiff, therefore, cannot contend that the racial animus of his own employees

played a role in his dismissal. *See, e.g.,* *Thermidor v. Beth Israel Med. Ctr.*, 683 F.Supp. 403, 413 (S.D.N.Y.1988) ("In sum, [defendant]'s limited role in the termination process precludes a finding that his racial animus was responsible for [plaintiff]'s discharge.").

Second, as defendant employed plaintiff for twenty years but dismissed him within three months of Varghese's first complaint, plaintiff maintains that the disproportionate time span affords an inference of discrimination. (*See* Pl. Mem. at 5–6). Plaintiff is mistaken. While a short time span between hiring and firing an employee weakens an inference of discrimination, *see Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir.1997) (listing a short time period between hiring and firing as one factor that weighs against plaintiff in a discrimination case), a long time span does not mandate a finding that a discharge was racially motivated. Here, the length of employment, if anything, weighs against plaintiff. For 19 years, defendant consistently recognized plaintiff's work performance and repeatedly promoted him. It was only after plaintiff's last promotion, and after his employees complained, that defendant took action. The short, two-year period between plaintiff's promotion and termination weakens plaintiff's claim. Plaintiff provides no evidence as to why defendant would promote him to supervisor and then, within two years, discharge him because of his race. Additionally, because the allegations against plaintiff were serious, defendant's swift response was not inappropriate.

Third, the remaining evidence not in dispute is insufficient to make out a discrimination claim. That plaintiff is African–American and was dismissed does not, by itself, give rise to an inference of discrimination.

### b. Plaintiff's Conclusions Are Not Supported By The Record

Ultimately, plaintiff's case rests on his conclusion that when Varghese, Chmielewski, and Palma complained about him, Felski "presum[ed]" his guilt, without investigating further. (*See* Minton Dep. at 105). Plaintiff lacks, however, any evidence to support this claim. Contrarily, defendant offers concrete and specific proof that it acted legitimately. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 109–10 (2d Cir.1994) (stating that "a plaintiff opposing [a summary judgment] motion must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the [alleged unlawful reason] was the real reason for the [termination]"). There is no dispute that each time an employee complained about plaintiff, a supervisor met with plaintiff to discuss the matter. As defendant offered plaintiff an opportunity to respond to each complaint against him, his claim that defendant failed to investigate these allegations is without merit.

Nonetheless, even if Felski and the other supervisors were wrong in believing the complaints of Varghese, Chmielewski, and Palma over plaintiff's denials, the result would be the same. A defendant need only believe in good faith the allegations against an employee, regardless of whether the allegations are true. *See Agugliaro v. Brooks Bros., Inc.*, 927 F.Supp. 741, 747 (S.D.N.Y.1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in . . . misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status."); *see also Cerwinski v. Insurance Servs. Office, Inc.*, No. 96–9368, 1997 WL 234672, 1997 U.S.App. LEXIS 10616, at *6 (2d Cir. May 8, 1997). Because plaintiff does not contend that Felski and Bodee–Isidore did not believe in good faith that he had engaged in inappropriate conduct, plaintiff's wrongful termination claim cannot succeed. *See Agugliaro*, 927 F.Supp. at 747 (dismissing plaintiff's age discrimination claim, in part, because "plaintiff admitted at his deposition that he could present no facts to show that . . . the critical person involved in making the decision to fire plaintiff[ ] did not actually believe that he had engaged in sexual conduct"); *Newman v. Montefiore Med. Ctr.*, No. 96 Civ. 2687, 1996 WL 741599, 1996 U.S. Dist. LEXIS 19172, at *13 (S.D.N .Y. Dec. 27, 1996) (applying *Agugliaro*'s good faith belief standard to race discrimination claim).

In addition, plaintiff's conclusion that he was treated differently than his predecessor, Krummins, also lacks merit. At his deposition, plaintiff admitted that he and Krummins held the same responsibilities as supervisor. (Minton Dep. at 102–03). According to plaintiff, the only difference in treatment was that his supervisors conducted formal meetings with Krummins, but not with him. (*Id.* at 102). Although plaintiff has not submitted any evidence to support this allegation, even if it is accurate, it does not make out a discrimination claim.

Hence, sufficient evidence does not exist to permit a jury to find that defendant terminated plaintiff's employment on the basis of race. Rather, the evidence demonstrates that plaintiff was discharged because he repeatedly acted inappropriately as supervisor. Accordingly, plaintiff's wrongful termination claim is dismissed.

### III. Hostile Work Environment

█ Plaintiff also contends that defendant subjected him to a hostile work environment in violation of Title VII and the

NYHRL.[5] Plaintiff, however, has not presented sufficient evidence to permit a reasonable jury to find in his favor. Accordingly, plaintiff's hostile work environment claim is also dismissed.

## A. *Applicable Law*

The Supreme Court has held that Title VII prohibits conduct "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).[6] To prevail on a hostile environment claim under Title VII, a plaintiff must establish both (1) a hostile work environment and (2) a basis for imputing the harassing conduct to the employer. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). To establish a hostile work environment, the plaintiff must show that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. 367). Whether the working environment was "hostile" or "abusive" depends on the "totality of the circumstances," including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a 'mere offensive utterance'; and whether it unreasonably interferes with an employee's work performance." *Richardson*, 180 F.3d at 437 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). This analysis is done from both a subjective and objective viewpoint. *Id.* at 436.

When a plaintiff accuses a supervisor of harassment, the employer's liability is presumed. *See Tomka*, 66 F.3d at 1305. When a non-supervisor is alleged to have created the hostile or abusive environment, however, "the employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998) (internal quotation marks omitted); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

## B. *Application*

Here, even assuming the facts alleged by plaintiff are true, plaintiff's hostile work environment claim fails for two reasons: (1) plaintiff has not demonstrated that he found the work environment hostile or abusive; and (2) plaintiff·has not shown that defendant should be liable for· the conduct of plaintiff's co-workers.

### 1. *Plaintiff's Subjective Viewpoint*

■ Plaintiff fails to even allege that he found the work environment hostile. Plaintiff contends that the racial remarks of Varghese and Palma were "ongoing," but gives no indication that the remarks were severe or pervasive. Rather, at his deposition, plaintiff explained that he and Varghese remained friends despite Varghese's alleged racial animus. Plaintiff also stated that Palma's comments did not offend him. In fact, as supervisor, plaintiff promoted both Varghese and Palma even

---

**5.** The same standards apply to a hostile work environment claim whether brought under Title VII or under the NYHRL. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 4 (2d Cir.1995). Thus, the NYHRL claim is analyzed in conjunction with the Title VII claim.

**6.** *Harris* was a sexual harassment case. The same standards, however, apply to race discrimination claims. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 n. 2 (2d Cir.1999); *see Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir.1997).

after hearing their beliefs about African–Americans. Additionally, at his deposition, plaintiff stated that the employees at the histology lab were "one family." Thus, in light of plaintiff's favorable treatment of Varghese and Palma, and of his expressed satisfaction with the environment in the lab, plaintiff's hostile work environment claim has no merit.

### 2. Defendant's Liability

Even if plaintiff could establish that Varghese and Palma created a hostile work environment, plaintiff has not shown a basis for imputing their conduct to defendant. Defendant maintained a Human Resources Department for its employees to deal with complaints of harassment; yet plaintiff never notified the Hospital of any concerns. (*See* Bodee–Isidore Aff. ¶ 4, Exs. 1, 2; Minton Dep. at 45–46, 85). Further, at his deposition, plaintiff explained that the only action he took to notify the Hospital of the purported racial harassment was to deny "emphatically" the claims made against him by Varghese, Chmielewski, and Palma. (Minton Dep. at 45–46). Plaintiff's response, instead, was for his attorney to send letters to Varghese and Chmielewski, threatening to sue them, not for discrimination but for defamation.

Moreover, alleging hostile work environment as a supervisor, plaintiff attempts to turn such a claim on its head. Typically, liability is imputed to a defendant-employer when the plaintiff was not in a position to stop the harassment. In other words, Title VII protects those employees who are in no position to protect themselves from a "discriminatorily hostile or abusive environment." Here, although plaintiff was in a position to stop the alleged

harassment of his subordinates, he failed to take any appropriate action. He did not suspend them; he did not dock their pay; he did not demote them; he did not even report them to the Hospital's Human Resources Department. *Cf. Burlington Indus.*, 524 U.S. at 762, 118 S.Ct. 2257 ("[O]ne co-worker … cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company … to make economic decisions affecting other employees under his or her control."). It is not surprising, then, that plaintiff fails to even suggest a reason why the purported abusive conduct of Varghese and Palma should be imputed to defendant.

Accordingly, defendant's motion with respect to plaintiff's hostile work environment claim is granted.

### IV. Intentional Infliction of Emotional Distress

 Plaintiff also claims that defendant's conduct constituted intentional infliction of emotional distress.[7] To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead and prove the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996); *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). To satisfy the first element, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

---

**7.** It is within a district court's discretion to exercise jurisdiction over state law claims after all federal claims have been dismissed. *See Purgess v. Sharrock*, 33 F.3d 134, 138–39 (2d Cir.1994). I elect to do so here.

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (citation omitted); *accord Howell,* 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (noting that the element is "rigorous and difficult to satisfy").

Here, no reasonable jury could find that defendant's conduct was extreme or outrageous. In fact, no reasonable juror could find that plaintiff has satisfied any of the elements of a claim for intentional infliction of emotional distress. Accordingly, defendant's motion for summary judgment with respect to plaintiff's claim of intentional infliction of emotional distress is granted.

## V. *Breach of Contract*

Plaintiff's final claim, for breach of contract, is also without merit. Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *accord Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 21 (2d Cir.1994) (affirming that the employment-at-will doctrine gives "an employer ... a nearly unfettered right to discharge an employee").

As plaintiff does not dispute that he was an at-will employee, he may not proceed with his breach of contract claim. Accordingly, summary judgment with respect to plaintiff's breach of contract claim is granted as well.

## *CONCLUSION*

For the reasons stated above, defendant's motion for summary judgment is granted as to all claims, and the complaint

is dismissed, with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.