# United States Court of Appeals
## For the First Circuit

No. 99-1810

MARIA D. FELICIANO DE LA CRUZ, ERASMO JIMENEZ,
AND THEIR CONJUGAL PARTNERSHIP,
Plaintiffs, Appellants,

v.

EL CONQUISTADOR RESORT AND COUNTRY CLUB
AND HUGH A. ANDREWS
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Jeannette M. López de Victoria for appellants.
Alfredo M. Hopgood-Jovet, with whom Javier Rivera-Carbone
and McConnell Validés were on brief, for appellees.

June 6, 2000

**LIPEZ, Circuit Judge**.  The appellants, María D. Feliciano de la Cruz, Erasmo Jiménez, and their conjugal partnership, brought a claim in the district court for the district of Puerto Rico accusing El Conquistador Resort and Country Club, a resort hotel located on the east coast of Puerto Rico, and Hugh A. Andrews, the resort's president, of discharging Feliciano because of her Puerto Rican national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").[1]  The district court granted the defendants' motion for summary judgment.  We affirm.

## I.

In late 1993, Feliciano went to work for El Conquistador as the credit manager at the soon-to-be-opened hotel in Fajardo, Puerto Rico.  According to Feliciano, her responsibilities included: (1) reviewing and approving credit or billing authorizations for commercial accounts; (2) preparing

---

[1] Feliciano was born and raised in Puerto Rico, and the parties treat that status as a "national origin" for purposes of Title VII.  The district court accepted this terminology.  We also accept it for the sake of convenience, without in any way deciding the underlying status question.  See Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) (assuming that Puerto Rican was a national origin for the purposes of a Title VII disparate treatment claim); see also De la Concha v. Fordham Univ., 5 F. Supp. 2d 188, 191 (S.D.N.Y. 1998) (same); Cartagena v. Ogden Servs. Corp., 995 F. Supp. 459, 464 (S.D.N.Y. 1998) (same).

-2-

end-of-the-month "aging reports" summarizing accounts receivable or debts that had not yet been collected; (3) training other employees; (4) attending pre-convention meetings; (5) helping the assistant controller with the monthly closing of accounts receivable; and (6) assisting the general cashier. Six months after she began the job, El Conquistador increased her salary by $4,000, ahead of her scheduled performance review. Later, Feliciano received a commendation letter from El Conquistador's president, Hugh Andrews, and a "Pionero Certificate," thanking her for her contributions to the hotel's first-year operations. Just three days after receiving the Pionero Certificate and thirteen months after she was hired, however, El Conquistador abruptly terminated Feliciano's employment, replacing her with a woman from the Philippines.

Feliciano then initiated this lawsuit, alleging that El Conquistador fired her because she was Puerto Rican in violation of Title VII, which makes it unlawful for an employer to "discharge any individual . . . because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). El Conquistador moved for summary judgment, asserting that it discharged Feliciano solely because her job performance failed to meet its expectations. Concluding that Feliciano "failed to provide any genuine and material facts directed toward proving

-3-

an animus of discrimination on the basis of national origin," the district court granted El Conquistador's motion. Feliciano contends that the court reached this ruling only because it "engaged in impermissible weighing of the evidence and in effect made credibility determinations in favor of El Conquistador."

The district court did not explicitly reference in its decision the McDonnell Douglas-Burdine-Hicks burden-shifting framework typically used in evaluating Title VII disparate treatment claims. Nevertheless, its focus on Feliciano's evidence of discriminatory animus is consistent with our prior decisions in which summary judgment has tended to stand or fall on whether the plaintiff adduced adequate evidence that the employer's stated reason for its action was a pretext for unlawful discrimination. See, e.g., Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999) cert. denied, 120 S.Ct. 1174 (2000); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999). Although we add some legal context and factual analysis to the district court's ruling, we conclude as the district court did that summary judgment was appropriate.

**II.**

We review the district court's grant of summary judgment de novo, evaluating the record in the light most favorable to, and drawing all reasonable inferences in favor of,

the nonmoving party.  See Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996).  We will uphold summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Even in employment discrimination cases "where elusive concepts such as motive or intent are at issue," this standard compels summary judgment if the non-moving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## A.   The Burden-Shifting Framework

Because Feliciano produces no direct evidence of discrimination, we apply the familiar McDonnell Douglas-Burdine-Hicks burden-shifting framework.  See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000).  The Supreme Court's opinion in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases "[w]ith the goal of 'progressively . . . sharpen[ing] the inquiry into the elusive factual questions of intentional discrimination.'"  St. Mary's

-5-

Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.8 (1981)). The plaintiff "carr[ies] the initial burden under the statute of establishing a prima facie case of [national origin] discrimination." McDonnell Douglas, 411 U.S. at 802. In employment termination cases, a plaintiff establishes a prima facie case by showing that: (1) the plaintiff is within a protected class; (2) she was qualified for, and performing her job at a level that met the employer's legitimate expectations; (3) she was nevertheless dismissed; and (4) after her departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work. See Mulero-Rodriguez, 98 F.3d at 673; Lipsett v. University of Puerto Rico, 864 F.2d 881, 899 (1st Cir. 1988). Although El Conquistador suggests in passing that Feliciano failed to establish a prima facie case, the developed argumentation in its brief assumes the existence of a prima facie case. We make the same assumption.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for its employment action. See McDonnell Douglas, 411 U.S. at 802. "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the

-6-

trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Hicks, 509 U.S. at 507 (internal quotation marks and citation omitted).

El Conquistador produced evidence that the hotel suffered from a number of financial problems during Feliciano's tenure as credit manager. For example, although she stated that under ideal circumstances invoices should be mailed to hotel guests within seven days of checkout, Feliciano admitted in her deposition that "it always took more than seven (7) days, sometimes several months, sometimes three (3), four (4) months" for invoices to be mailed. The hotel carried substantial uncollected debts, which Feliciano conceded had not reached an "acceptable" level when she was discharged in November 1994. She likewise stated that write-offs for bad debts in 1994 were "kind of high." Because Feliciano was arguably responsible as credit manager for at least some of these problems, El Conquistador easily met its burden of producing a legitimate, non-discriminatory reason for its employment action. See Ruiz v Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1999) (to rebut the plaintiff's prima facie case, an employer "need only produce enough competent evidence, taken as true, to enable

a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action").

Once the employer offers a nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the reason proffered was "a coverup" for a "discriminatory decision." McDonnell Douglas, 411 U.S. at 805. At this third step in the burden-shifting analysis, "the McDonnell Douglas framework falls by the wayside," Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991), because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Burdine, 450 U.S. at 256.[2] Thus, we are left to decide whether Feliciano has met her burden of persuasion: that is, whether the evidence she offered to show

_____

[2]Our focus on El Conquistador's motive or intent in discharging Feliciano responds to Feliciano's theory of the case--namely, that El Conquistador's decision to fire her was motivated by anti-Puerto-Rican bias. This is not a case, like Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999), cert. denied, 120 S.Ct. 1174 (2000), in which the plaintiff alleged that the employer's decision-making process was affected by discriminatory stereotypes or other types of unconscious national-origin bias. As we pointed out in Thomas, "[t]he ultimate question is whether the employee has been treated disparately 'because of [national origin].' This is so regardless of whether the employer consciously intended to base the evaluations on [national origin], or simply did so because of unthinking stereotypes or bias." Id. at 58.

that El Conquistador discharged her because she is Puerto Rican created a genuine dispute as to material fact.

## B.  Pretext and Discriminatory Animus

It is the settled law of this circuit that to survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must produce evidence that: (1) the employer's articulated reason for laying off the plaintiff is a pretext; and (2) the true reason is discriminatory animus. See Thomas, 183 F.3d at 56.  This standard is sometimes described as a "pretext-plus" standard, in contrast to the standard applicable in those jurisdictions in which evidence of pretext without more is sufficient to defeat a motion for summary judgment.  See id. at 56-57.  The "pretext-plus" standard, however, "does not necessarily require the introduction of additional evidence beyond that required to show pretext."  Id. at 57 (internal quotation marks and citations omitted).  The same evidence used to show pretext can support a finding of discriminatory animus if it enables a  factfinder "reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action."  Id.  (internal quotation marks and citations omitted).  There is simply "no mechanical formula" for determining whether the plaintiff's evidence of pretext and discriminatory animus suffices to forestall summary judgment.

See id. In evaluating whether summary judgment was proper, therefore, we must weigh all the circumstantial evidence of discrimination, including the strength of the plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that "everything depends on individual facts." Id.

We consider first Feliciano's attack on El Conquistador's declaration that it discharged her because she was not adequately performing her job. In evaluating whether El Conquistador's stated reason for firing her was pretextual, the question is not whether Feliciano was actually performing below expectations, but whether El Conquistador believed that she was. See Mulero-Rodriguez, 98 F.3d at 674; Goldman v. First National Bank of Boston, 985 F.2d 1113, 1118 (1st Cir. 1993). To show that El Conquistador did not believe that her job performance was unsatisfactory, Feliciano offered evidence that the financial problems at the hotel were not her fault, and that El Conquistador had indicated to her that she was doing a good job. According to Feliciano, the hotel's financial problems were caused by an inexperienced and improperly trained hotel staff, a bug in the computer system, a failure of the finance department to obtain "spec sheets" for group activities and banquets that presumably would have facilitated timely billing, and a failure to provide backups for the banquet checks. She

-10-

contended that the hotel ignored her requests to hire additional billing coordinators and hotel staff to help improve billing. She maintained that the high percentage of bad checks and aging accounts receivable were attributable to the resort's group contract policies rather than her performance. Finally, Feliciano cited her salary raise, commendation letter, and Pionero Certificate, as further evidence that El Conquistador did not believe that she was performing her job unsatisfactorily.

El Conquistador counters that, because the $4,000 salary increase was a routine adjustment, not a merit-based raise, which came seven months before Feliciano's termination, it proves nothing about the hotel's view of the adequacy of Feliciano's performance at the time she was fired. El Conquistador insists that the letter of commendation and the Pionero Certificate did not demonstrate that it believed Feliciano was performing satisfactorily because they expressed no individualized praise of Feliciano, but only generic recognition sent to numerous hotel employees. It also disputes her explanation of the reasons for the hotel's financial problems.

We agree with Feliciano that, viewed in the light most favorably to her, her explanations of the hotel's problems,

coupled with the salary raise and commendations, would permit a reasonable trier of fact to infer that El Conquistador did not actually believe that Feliciano was doing her job poorly. Although Feliciano undoubtedly had responsibility as credit manager for many of the areas in which the hotel suffered financial problems--e.g., uncollected debts, aging accounts, untimely billing--her explanations of these problems, if true, might absolve her of blame. For example, it would be unreasonable to hold her responsible for a malfunctioning computer system, a failure of the banquet staff to deliver "spec sheets," a hotel's general policies regarding group contracts, or a failure of the hotel to hire adequate staff to keep pace with billing. Moreover, although Feliciano acknowledged that her job included training other employees, it would be unreasonable to assume that this meant training all of the employees implicated in the numerous problems she described.

It is also reasonable to infer that El Conquistador would not have sent Feliciano even generic commendations if it were truly dissatisfied with her job performance and that the company would have formally communicated its dissatisfaction in some way before terminating her employment. In short, although the evidence of pretext is thin and disputed, Feliciano survives summary judgment on that issue because a reasonable trier of

fact could find that El Conquistador did not believe that Feliciano's job performance was unsatisfactory, and hence fired her for some other reason.

In this case, however, the evidence of pretext only suggests that El Conquistador fired her for some reason unrelated to performance. It does not shed any light on what El Conquistador's true reason for firing her was, let alone show that the reason was discrimination based on Feliciano's Puerto Rican origin. Indeed, even if a rational trier of fact could infer from the evidence of pretext that El Conquistador's decision to fire Feliciano was "unfair" (because she continued to perform her job well), that proof is not sufficient to state a claim under Title VII. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994). Title VII was not designed to transform courts into "super personnel departments, assessing the merits--or even the rationality--of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825. To obtain relief under Title VII, the evidence must permit a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the employer's decision. See Thomas, 183 F.3d at 57. Although "[e]vidence of [national origin] animus need not be of the smoking gun variety, . . . the totality of the circumstances must permit a reasonable inference

that the employer's justification for the challenged action was a pretext for . . . discrimination." Goldman, 985 F.2d at 1119 (emphasis added) (internal quotation marks and citation omitted).

As proof of discrimination, Feliciano argues: (1) that prior to her termination there were other Puerto Rican employees at her same level in El Conquistador's finance department who "were replaced by Americans or foreigners";[3] (2) that El Conquistador's executive committee was "comprised entirely of non-Puerto Ricans"; (3) that her replacement, a Filipino woman, was hired prior to her termination; and (4) that these facts make this case indistinguishable from our decision in Olivera v. Nestle Puerto Rico, Inc., 922 F.2d 43 (1st Cir. 1990), a case in which we reversed the entry of summary judgment after finding sufficient evidence of discriminatory animus (there, age discrimination), see id. at 49-50.

---

[3]Feliciano insists that, with respect to the Puerto Rican employees dismissed from El Conquistador's finance department, El Conquistador failed to comply with her request for production of personnel files. Feliciano does not, however, challenge any discovery rulings in this appeal. Even if she had, such arguments would be waived because Feliciano failed to raise them in the district court. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999) (stating that the court of appeals will not reverse an order granting summary judgment on the basis of arguments not made in the trial court).

More specifically, Feliciano claimed that El Conquistador terminated "Messrs. Guzmán, Arenas and Rivera [Aponte], all Puerto Rican nationals who were former Conquistador finance department employees," and replaced them with non-Puerto Ricans. The record does not support this assertion. Feliciano testified in her deposition that, at the time she left El Conquistador, Mr. Guzmán was still working with the company. Feliciano said that she became aware that Guzmán was asked to resign when he told her so, but she produced no admissible evidence to confirm this hearsay. She stated that she did not know "for a fact" whether Rivera Aponte was asked to resign. She did not think that Arenas was terminated. Rather, she thought that he had retired from the company.

Feliciano's allegation that El Conquistador's executive committee was comprised entirely of non-Puerto Ricans is equally flawed. In November 1994, the committee had two Puerto Rican members; in October 1998 three Puerto Ricans sat on that body. Indeed, at various times the executive committee had members from the United States, Sweden, Hong Kong, Lebanon, Mexico, Colombia, India, as well as Puerto Rico. Likewise, the fact that Feliciano's replacement was a recent company hire provides no evidence of discriminatory animus.

There are crucial differences between this case and the Olivera age discrimination case relied upon by Feliciano. In Olivera, we concluded that "the employer's articulated reasons for its action [of discharging the plaintiff] were convincingly refuted." Id. at 49 (emphasis added). There, the plaintiff produced evidence that of eight people fired as part of a reorganization, four or five of them were over forty and all but one were replaced within two years by persons under thirty. See id. Moreover, the employer "had told plaintiff more than once that '[he] had to get rid of several of [plaintiff's] subordinates because they were not performing according to his opinion up to standards because of their age.'" Id. Finally, the employer offered a retirement inducement package aimed at employees over fifty-eight. See id.

Here, Feliciano offers no evidence that El Conquistador fired Puerto Ricans in greater proportion than non-Puerto Ricans, engaged in a pattern of firing Puerto Ricans and replacing them with non-Puerto Ricans, or adopted corporate policies discriminatory toward Puerto Ricans. There is no evidence of statements by El Conquistador's management or officers indicating a bias against Puerto Ricans, and no evidence that El Conquistador's evaluation of her performance was infected by stereotyped thinking or other types of

-16-

unconscious national-origin bias.  Thus, if we remanded for trial, the jury "would be left to guess at the reasons behind the pretext."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 199o).  Under such circumstances, summary judgment is proper.  See Lattimore v. Polaroid Corp., 99 F.3d 456, 467-68 (1st Cir. 1996) (upholding summary judgment where "[s]ubmitting the issue of discriminatory intent to a jury on this record would amount to nothing more than an invitation to speculate"); see also Connell v. Bank of Boston, 924 F.2d 1169, 1178 (1st Cir. 1991) ("[T]he question is not whether there is literally no evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor.") (internal quotation marks and citations omitted).[4]

**Affirmed**.

---

[4]The district court also granted summary judgment in favor of the defendants on claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  The appellants do not challenge the dismissal of any of these claims on appeal.