**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-1325

AURELIO ROSADO, ET AL.,

Plaintiffs - Appellants,

v.

WACKENHUT PUERTO RICO, INC., ET AL.,

Defendants - Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
Carter,[*] Senior District Judge,

Celina Romany, with whom Juan M. Frontera Suau and Celina Romany Law Offices were on brief, for appellants.
José J. Sánchez Vélez, with whom Yldefonso López Morales, Eileen M. García Wirshing and O'Neill & Borges Law Firm were on brief, for appellees.

December 29, 2005

---

[*]Of the District of Maine, sitting by designation.

**CARTER**, <u>**Senior District Judge**</u>. Plaintiffs/Appellants, Aurelio Rosado, Lydia Rosado, and the conjugal partnership formed between them, filed the present complaint against Defendants/Appellees, Wackenhut Puerto Rico ("WPR") and Wackenhut International, Inc. ("WII") (collectively "the Wackenhut defendants"). Plaintiffs allege violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (1994 & Supp. 2003); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq. (1994 & Supp. 2003); and various Puerto Rico statutes. The district court granted Defendants' Motion for Summary Judgment on all counts of Plaintiffs' Verified Complaint. Plaintiffs appeal.[1]

**I.**

<u>**Facts and Procedural History**</u>

The district court accurately summarized the facts as follows. WII is the parent company of WPR, a subsidiary company dedicated to providing security and surveillance services in the Puerto Rico private and public sectors. Mr. Rosado worked at WPR as general manager from January 31, 1989 until July 12, 2002, when he was terminated. As general manager, Mr. Rosado possessed broad responsibility and discretion for WPR's operations, but his

---

[1]In the interest of clarity, we discuss the case with exclusive reference to appellant Aurelio Rosado. However, this opinion is also binding on appellant Lydia Rosado and the conjugal partnership formed between appellants Aurelio and Lydia Rosado.

-2-

actions were ultimately subject to WII corporate headquarters' approval. Mr. Rosado's responsibilities included submitting monthly operations reports, balance sheets, and profit and loss sheets to the Vice-President of WPR Operations, Fernando Hegel, and the President of WII, William Morrow. Mr. Rosado was subject to periodic performance evaluations, and received yearly bonuses based upon his performance and operational results.

During the first several years of Mr. Rosado's managerial guidance, WPR performed well. At its peak, WPR drew $33 million in revenues. Mr. Rosado received positive evaluations and was rewarded with favorable bonuses. Between 1999 and 2001, WPR lost a significant number of government contracts, and revenue dropped by half. While both parties admit that there was recognition that WPR needed to lessen its reliance on government contracts, which were ephemeral, and to instead redirect sales toward the private sector, the Wackenhut defendants and Mr. Rosado each claim that the other party was unresponsive in joining to remedy the problem.

After the conclusion of a fruitless dialogue between Mr. Rosado and the Wackenhut defendants on righting WPR's ship, in June 2001, Mr. Morrow and Mr. Hegel directed John Griffey, a WII Field Support Operations Special Project Manager, to visit WPR. Mr. Griffey was directed to draft a sensitivity report assessing WPR's operations and issuing recommendations for

improvement, based upon his visit to Puerto Rico. The sensitivity report highlighted the need for improved collections, operational efficiency, and increased sales. In late January or early February 2002, Mr. Morrow and Mr. Hegel met with Mr. Rosado in Puerto Rico to discuss how to improve WPR's grim state of affairs. Mr. Morrow strongly expressed his dissatisfaction with WPR's performance and the need for drastic change, and directed Mr. Rosado to submit a comprehensive action plan by the end of February 2002.

Several days after the meeting took place, Mr. Rosado suffered a cardiac arrest.[2] Mr. Rosado was hospitalized and in recovery for approximately fifty-five days before returning to work. Mr. Rosado was unable to work on the action plan during his recovery. Mr. Morrow and Mr. Hegel directed Mr. Griffey, who had become familiar with WPR's operations during his earlier visit, to return to Puerto Rico, assist in the preparation of the WPR action plan, and provide leadership in Mr. Rosado's absence.

Mr. Rosado returned to work in April 2002, but Mr. Griffey remained at WPR. Mr. Rosado claims that WPR employees were now answering exclusively to Mr. Griffey's command and that although when questioned as to his formal role Mr. Griffey was purposefully ambiguous, Mr. Griffey had become WPR's de-facto

_____

[2]This was Mr. Rosado's second heart attack. His first heart attack took place in April 1998.

general manager. Mr. Rosado claims that while he retained his formal title as general manager, he had lost all authority at WPR.

Shortly after Mr. Rosado returned, Mr. Hegel requested that he review Mr. Griffey's action plan and either approve Mr. Griffey's plan or, in the alternative, submit his own action plan. Mr. Rosado reviewed and, with some reservations, adopted Mr. Griffey's action plan.

In or around May 2002, Miguel Angel Escobar, the President of Wackenhut El Salvador ("WES"), placed a telephone call to Mr. Rosado.[3] During the conversation, Mr. Escobar asked Mr. Rosado, "Why don't you retire?" Mr. Escobar suggested that "things would probably be easier for everyone" if Mr. Rosado retired.

Approximately one month later, Mr. Morrow made the decision to terminate Mr. Rosado. On July 12, 2002, Mr. Hegel informed Mr. Rosado that he was terminated. Upon Mr. Hegel's recommendations, Mr. Morrow appointed Mr. Griffey as the new general manager for WPR.

Mr. Rosado filed the instant action alleging violations of the ADEA, the ADA and various Puerto Rico statutes. The district court granted the Wackenhut defendants' Motion for

---

[3]Like WPR, WES is a subsidiary of WII. WES's leadership has no authority over WPR.

Summary Judgment on all counts of Mr. Rosado's Verified Complaint.

## II.

## Summary Judgment Standard

The standard for summary judgment is straightforward and well-established. A district court may enter summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review summary judgment rulings de novo, construing the record evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue," summary judgment is appropriate if the non-moving party rests "merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano, 218 F.3d at 5 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990))(internal quotations omitted). It is within this procedural framework that we assess Mr. Rosado's claims. Our review is not constrained by the lower

-6-

court's stated rationale; we may affirm the entry of summary judgment on any ground supported by the record. See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d at 178, 184 (1st Cir. 1999).

## The ADEA Claim

The ADEA makes it unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of his age. See 29 U.S.C. § 623(a)(1). Since there is no direct evidence which demonstrates the Wackenhut defendants' alleged discriminatory animus against Mr. Rosado, we must consider the multi-part McDonnell Douglas test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973). Applying the McDonnell Douglas framework, Mr. Rosado must first "demonstrate that he (1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action; and (4) was replaced by a person with roughly equivalent job qualifications." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993). The record supports the conclusion that Mr. Rosado satisfies the prima facie case factors. The burden of production then shifts back to the employer who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. Dominquez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000). Mr. Rosado admits, and

-7-

this Court finds, that the Wackenhut defendants have satisfied their burden of production by asserting that Mr. Rosado was discharged because his managerial performance since 1998 was unsatisfactory and because WPR was suffering a lack of effective leadership.

In the final stage of the analysis the burden shifts back to Mr. Rosado to show that the employer's alleged justification was not its true reason for the adverse employment action, but was a mere pretext for age discrimination. Id.; Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). The ADEA "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." Freeman v. Package Mach. Co., 865 F.2d 1331, 1341 (1st Cir. 1988). Mr. Rosado must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. See Mesnick, 950 F.2d at 825.

The record is devoid of any sign that anyone in a decision-making role, including Mr. Morrow and Mr. Hegel, bore any discriminatory animus toward Mr. Rosado. Appellant fails to present evidence necessary to show that the Wackenhut defendants' given reasons for the termination were pretextual. Appellant makes sweeping statements but fails to cite to any material fact

-8-

in controversy in the record. Although appellant states that "the district court has completely ignored most, if not all, of Plaintiff's pretext evidence," he never discloses what evidence the district court disregarded. Appellant's Brief at 21. Generally, appellant criticizes the district court for missing important considerations such as "the significance of assessing the whole picture, proximity in time, and the employer's control of information." Appellant's Brief at 22. But, here again, he never states what is that pertinent evidence.

Even if we were to consider appellant's unsupported arguments, the evidence fails to create a trial-worthy age discrimination claim. Appellant states that according to Wackenhut corporate officers Mr. Rosado was aware that a sensitivity report was being prepared but Mr. Rosado denies that he knew the reasons for Mr. Griffey's visit to the island. Assuming that there is contradictory testimony on this point, such conflict does not support the inference that the reason given by the Wackenhut defendants for Mr. Rosado's termination was a pretext for age discrimination. Appellant also attempts to draw some inference of pretext from the February 2002 meeting between Mr. Morrow and Mr. Rosado wherein Morrow discussed the sensitivity report's conclusions with Mr. Rosado, which were apparently unknown to Rosado until that time. However, the fact that Mr. Rosado was kept out of the loop on the sensitivity

report does not in any way suggest that the Wackenhut defendants' performance-based reasons for terminating Mr. Rosado were false.

Finally, appellant suggests that when Mr. Morrow asked him to create an action plan for WPR, Mr. Morrow was giving Mr. Rosado an opportunity to improve the company's economic situation. Because he was terminated less than three months after returning to work from the heart attack, appellant suggests that there is sufficient evidence in the record for a trier of fact to conclude that the chance Mr. Morrow gave him was just a false gesture in a discriminatory cover-up scheme. However, the timing of his termination, standing alone or even in conjunction with being kept out of the loop on the sensitivity report, does not in any way suggest that the Wackenhut defendants' performance-based reasons for terminating Mr. Rosado were false. Appellant has not presented any evidence besides his age and Mr. Griffey's presence pointing to age as a factor in his termination. Moreover, appellant has made no attempt to demonstrate that WPR's economic losses under Mr. Rosado's leadership were fabricated by the company to conceal his superiors' discriminatory motives.

### The ADA Claim

To establish a claim of disability discrimination under the ADA, a plaintiff must prove, by a preponderance of evidence, that he (1) was disabled within the meaning of the ADA, (2) was

able to perform the essential functions of the job with or without reasonable accommodation, and (3) was discharged by the employer in whole or in part because of his disability. Jacques v. Clean-Up Group, 96 F.3d 506, 511 (1st Cir. 1996). Appellant does not allege any direct evidence of disability discrimination. Here again, in the absence of direct evidence, Mr. Rosado may "indirectly" prove his case by "using the prima facie case and burden shifting methods originated in McDonnell Douglas." Jacques, 96 F.3d at 511 (quoting Katz v. City Metal Co., 87 F.3d 26, 30 n.2 (1st Cir. 1996)).

Under McDonnell Douglas Mr. Rosado must demonstrate by a preponderance of evidence that he (1) has a disability within the meaning of the ADA, (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations, (3) was subject to an adverse employment action by a company subject to the ADA, (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees, and (5) suffered damages as a result. Id. The district court granted defendants' motion for summary judgment after finding that Mr. Rosado failed to establish a prima facie case under the ADA.

Appellant correctly asserts that it is not necessary that he actually be disabled, but that it is sufficient that his employer regarded him as disabled. Considering this theory of liability, the district court found that Mr. Rosado's assertion

that he "must have been generally perceived as impaired because of his shortness of breath" was not supported by the record. On appeal Mr. Rosado again contends that the Wackenhut defendants terminated him because he was perceived as being "an old man who had suffered a second heart attack which prevented him from performing the task required from a manager in the industry." Appellant's Brief at 34. To support this statement, appellant states that anyone observing him after he returned would have noticed physical changes that would have led them to conclude that he was disabled or could not do the job. However, appellant does not cite to any evidence in the summary judgment record that even upon noticing his shortness of breath, anyone entertained the belief that he was disabled. Without providing evidence of a single instance of misperception by any particular person or group of persons, Mr. Rosado can not satisfy his prima facie burden under the ADA.

Although appellant suggests that after he returned to work he was universally treated as if he was completely incapable of performing the duties of general manager, his only support for this conclusion is that he was required to have Mr. Griffey authorize his decisions before they became final. Mr. Rosado makes no citation to the evidentiary record to support the assertion that his decisions had to receive prior authorization from Mr. Griffey. However, even if Mr. Griffey was exercising

-12-

oversight over Mr. Rosado's decisionmaking at WPR, there is no evidence that this is related to a perception by the Wackenhut defendants that Mr. Rosado is disabled rather than to the troubled financial condition of WPR and the corporate effort to implement the action plan, which Mr. Griffey was instrumental in developing. Without record support for the inference that the alleged oversight was in some way connected to Mr. Rosado's shortness of breath, Mr. Rosado can not establish a <u>prima facie</u> case under the ADA.

The district court's judgment is <u>affirmed</u>.