**Paula D. CASAMENTO, Plaintiff,**

v.

**MASSACHUSETTS BAY TRANSPORTATION AUTHORITY and Boston Carmen's Union, Local 589, Defendants.**

**Civil Action No. 06–10181–NMG.**

United States District Court,
D. Massachusetts.

May 8, 2008.

Scott A. Lathrop, Attorney at Law, Groton, MA, for Plaintiff.

Kevin S. McDermott, MBTA Law Department, John F. McMahon, Angoff, Goldman, Manning, Wanger & Hynes, PC, Boston, MA, for Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff, Paula Casamento ("Casamento"), has brought a claim of gender discrimination against her employer and her union. After limited discovery, the defendants have filed motions for summary judgment.

## I. *Background*

### A. **Factual Background**

Casamento has been employed by the Massachusetts Bay Transportation Au-

thority ("the MBTA") since February 13, 1984 when she was hired as a bus driver. Shortly after being hired, she became (and continues to be) a dues-paying member of Local 589 of Boston Carmen's Union ("Local 589" or "the Union"). In 1997, after suffering spells of vertigo, Casamento stopped driving a bus and was assigned a position as a fare collector. In 2004, the MBTA instituted its automated fare system and no longer employed fare collectors. At that time, Casamento was reassigned to work as a customer service representative where she remains employed.

On October 22, 2002, the MBTA posted a notice of a position vacancy for Supervisor of Revenue Sales Operations ("the Supervisor position"). The Supervisor position is within the Collective Bargaining Unit of MBTA employees represented by the Office and Professional Employees International Union, Local 453. Casamento was one of 11 candidates who applied for the position and the only "internal" female candidate (i.e., the only female candidate then employed by the MBTA). No candidates were ever interviewed for the position. On June 19, 2003, an e-mail from Susan Wolfson, MBTA Director of Revenue requested that the posting be rescinded because of budget restrictions and in order to give her time to determine staffing needs once the MBTA implemented its automated fare system. Four days later, the MBTA advised all applicants, including Casamento, that the posting was rescinded.

In July, 2003, Casamento sent a letter to the General Manager of the MBTA regarding her suspicions that another MBTA employee, Ralph Schlueter ("Schlueter"), had obtained the Supervisor position. The Assistant General Manager responded by letter that the MBTA had not filled the vacant position and that Schlueter had been assigned to assist the Revenue Sales staff 13 years earlier and continued in that capacity. Casamento disputes that characterization and argues that Schlueter was performing the duties of the Supervisor position.

Schlueter was hired by the MBTA as a bus driver in 1984. The MBTA claims that, since 1994, he performed the duties of customer service representative in the Revenue Department of the MBTA. Casamento contends, to the contrary, that Schlueter actually performed the duties of the Supervisor position. Schlueter remained with the title and at the pay grade of a bus driver until his retirement in March, 2007. The MBTA also contends that, since 1994, Schlueter shared the customer service representative duties with a female co-worker who took over the duties when Schlueter retired and that Schlueter did not manage or supervise anyone. Schlueter, who applied for the Supervisor position when Casamento did, wrote on his application that he had been performing the duties of the position for over a decade. He listed the tasks that he performed in his current position which were very similar to the responsibilities listed in the posting for the Supervisor position. Both parties agree that Schlueter's job functions and responsibilities did not change significantly from 1994 until his retirement in 2007.

On October 20, 2003, Casamento delivered a Grievance Report to Michael F. Mastrocola ("Mastrocola"), Local 589's Executive Board Member/Delegate for bargaining unit members employed in the MBTA's Rapid Transit/Revenue Division. Mastrocola told Casamento that her grievance lacked merit. He also remembers telling her that the Supervisor position was not a title in Local 589's bargaining unit or subject to the terms of the Local 589/MBTA Collective Bargaining Agree-

ment ("the CBA") and that a grievance could not succeed because of MBTA's statutory management rights under Mass. Gen. Laws ch. 161A, § 25. It is unclear whether Casamento disputes that Mastrocola gave her an explanation for why her claim lacked merit.

Casamento filed a complaint against the MBTA and Local 589 with the Massachusetts Commission Against Discrimination ("MCAD") on November 7, 2003. Almost one year later, the MCAD dismissed the charge for lack of probable cause, concluding that Schlueter had not taken on significant additional duties or received a significant pay raise at the time Casamento claims he acquired the Supervisor position and that there was no evidence of discrimination even if Schlueter assumed the position.

### B. Procedural History

On January 30, 2006, Casamento, acting *pro se,* filed a complaint in federal court. Shortly thereafter both Local 589 and the MBTA filed motions to dismiss for lack of subject matter jurisdiction (Docket Nos. 3 and 13). Local 589 contended that Casamento's original complaint did not conform to Fed.R.Civ.P. 8(a)(1) and (2) because the cause of action was too vague and service was improper. Local 589 also asserted that the court lacked subject matter jurisdiction to hear the claim. Casamento opposed both motions.

At what was to be a scheduling conference, the Court encouraged Casamento to retain counsel and gave her 30 days to amend her complaint. An amended complaint was filed August 23, 2006 asserting that Local 589 and the MBTA had violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2 *et seq.* That complaint was answered by both defendants and the motions to dismiss were rendered moot. A scheduling conference was held Febru-

ary 28, 2007. In October, 2007, Local 589 and the MBTA filed motions for summary judgment both of which are opposed.

### II. *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### III. The MBTA's Motion for Summary Judgment (Docket No. 46)

#### A. Legal Standard in a Failure to Promote Case

 Under Title VII, it is unlawful for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2(a)(1). In a disparate treatment case such as this one, the core inquiry is whether the defendant-employer intentionally discriminated against the plaintiff because of her gender. *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 153 (1st Cir.1990). If the plaintiff is unable to offer direct evidence of discrimination, the burden of producing evidence is allocated according to the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, the plaintiff bears the burden of establishing a prima facie case of sex discrimination. *Id.* at 802, 93 S.Ct. 1817. The elements of a prima facie case for failure to promote are that the plaintiff 1) is a member of a protected class who 2) was qualified for an open position for which she applied but 3) was rejected 4) in favor of someone possessing similar qualifications. *Gu v. Boston Police Dep't*, 312 F.3d 6, 11 (1st Cir.2002). Upon meeting that relatively modest burden, an inference arises that the employer engaged in impermissible sex discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A burden of production then falls upon the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. *St. Mary's Honor Ctr.*

*v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 If the employer carries its burden of production, the presumption of discrimination vanishes and the plaintiff is left to demonstrate that the employer intentionally discriminated against her. *Id.* at 507–08, 113 S.Ct. 2742. To survive summary judgment, a plaintiff at the third stage must introduce evidence to create a genuine issue of material fact with respect to whether: 1) the employer's articulated reason for the job action is pretextual and 2) the true reason is unlawful discrimination. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 62 (1st Cir.1999).

#### B. Casamento's Prima Facie Case

The MBTA argues in its motion for summary judgment that Casamento fails to establish a prima facie case of discrimination. Of the four elements required to demonstrate a prima facie case for gender discrimination, it is undisputed that Casamento satisfies two of them. She is a woman and therefore a member of a protected class and she did not obtain the position for which she applied. In dispute is whether Casamento was qualified for an open position and whether someone possessing similar qualifications obtained the position she sought.

The MBTA contends that 1) the Supervisor position for which Casamento applied was rescinded and therefore Casamento cannot demonstrate that the position was open, 2) Casamento fails to present evidence of discriminatory animus by any official of the MBTA when it decided to rescind the posting and 3) there is "a significant question" whether Casamento can prove that she was qualified for the position because she had a medical condition which disqualified her from operating a motor vehicle for the MBTA. In order to

address the more readily disposable arguments first, the MBTA's arguments will be addressed in reverse order.

■ With respect to Casamento's qualifications for the Supervisor position, the MBTA's evidence of her alleged medical disqualification does not entitle it to summary judgment. The evidence presented by the parties indicates that Casamento was disqualified from driving a motor vehicle of some kind in 1997. The extent of that disqualification and whether it continued until 2002 when she applied for the Supervisor position remains a genuine issue of material fact to be determined at trial.

The MBTA also apparently contends that Casamento has failed to establish a prima facie case because she has not presented evidence of discriminatory animus by any official of the MBTA in connection with its rescission of the Supervisor position. In order to satisfy her burden with respect to a prima facie case, Casamento need not, however, present direct evidence of discriminatory animus. She must merely demonstrate that she is a member of a protected class who was qualified for an open position for which she applied but was rejected in favor of someone possessing similar qualifications. *See Gu*, 312 F.3d at 11. None of those elements requires a showing of discriminatory animus at the prima facie case stage.

■ MBTA's best argument is that the Supervisor position was not open and/or was not filled by someone with similar qualifications, both of which are essential elements of a prima facie case. There is a genuine issue of material fact, however, as to whether the position was open. Casamento contends and has presented some evidence that, after the MBTA announced that the position had been rescinded, Schlueter worked in the Supervisor position although his title and pay remained the same throughout his career at the MBTA. The summary evidence demonstrates that Schlueter did not take on any significant additional duties or receive a salary increase in June 2003. Casamento presents evidence that Schlueter had, nevertheless, informally and temporarily held the Supervisor position for many years prior to the posting. On his application for the Supervisor position Schlueter wrote that he had been performing the functions of the Supervisor position for over a decade and in detailing his responsibilities before the posting, he listed duties very similar to those required in the Supervisor position. Casamento also argues that under MBTA rules, the MBTA was not permitted to give him the position permanently.

The MBTA has not presented indisputable evidence that the Supervisor position was not filled and therefore there remains a genuine issue of material fact as to whether there was an open position withheld from Casamento and granted to another employee thus rendering summary judgment inappropriate on this ground.

## C. Casamento's Evidence of Discrimination

■ The MBTA did not explicitly argue in its brief that Casamento has failed to meet her burden at the final stage where she must produce evidence that the MBTA's stated reason for not promoting her was pretextual and that the pretext was used to hide a discriminatory motive. It suggests this argument, however, by contending that Casamento has not proffered a prima facie case because she has not demonstrated that the MBTA's decision to rescind the posting was motivated by discrimination. Once the MBTA has offered its nondiscriminatory reason for its action, i.e., that it had rescinded the position, the burden shifts back to Casamento

to show that the reason proffered was a ruse for a discriminatory decision. *See Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir.2000).

■■■■■ In order to survive a motion for summary judgment, Casamento must produce evidence sufficient for a reasonable jury to find that the MBTA's stated reason was a pretext and that the true reason for failing to promote her was discriminatory. *Thomas*, 183 F.3d at 56. That standard does not necessarily require the introduction of additional evidence beyond what is required to show a prima facie case and pretext. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In evaluating whether to grant summary judgment, the Court must weigh all of the circumstantial evidence of discrimination, including the strength of the prima facie case and the employer's proffered reasons for its action. *Feliciano de la Cruz*, 218 F.3d at 7.

As discussed above, Casamento has presented sufficient evidence to raise a genuine issue of material fact as to whether the MBTA's rescission of the posting was a pretext for not hiring her. Schlueter stated in his application for the Supervisor position that he had been performing the duties of the position for over a decade and listed responsibilities for his current job that were very similar to the duties outlined by the posting for the Supervisor position. The MBTA contends that Schlueter explained at his deposition that he did not make final management decisions or supervise anyone despite what his application suggested. The MBTA argues that such testimony is enough to eradicate any genuine issue of material fact with respect to whether Schlueter performed the functions of a supervisor. Viewing all of the facts in the light most favorable to

Casamento, however, the Court concludes that a jury could find, albeit by the slimmest margin, that the MBTA's reason for not promoting Casamento was pretextual.

■■■■■ Casamento's evidence of pretext suggests only that MBTA may have allowed another employee to perform the functions of the Supervisor position but sheds no light on what the MBTA's true reason might have been for not promoting Casamento. In order to obtain relief under Title VII, the evidence "must permit a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the employer's decision." *Feliciano de la Cruz*, 218 F.3d at 8. Casamento presents no evidence, in addition to that necessary for her to state a prima facie case and to show that the MBTA's reason was pretextual, to demonstrate that discrimination motivated the MBTA's decision not to promote her. She merely adds that she was the only female internal candidate. Casamento also apparently was senior to Schlueter. The pretext evidence Casamento presents is tenuous at best and, consequently, this Court finds the holding of *Feliciano de la Cruz*, in which the First Circuit Court of Appeals upheld summary judgement in favor of the employer, controlling in the disposition of this case.

As in this case, in *Feliciano de la Cruz*, the evidence the plaintiff presented with respect to pretext was "thin and disputed" and she offered no additional evidence of discrimination supported by the record. *Id.* at 7. Casamento, like Feliciano de la Cruz, has offered no evidence that the MBTA promotes men in greater numbers than women, engages in a practice of firing women and hiring men or has adopted policies discriminatory toward women. Nor has she proffered any statements of management or officers of the MBTA indicating a bias against women or performance evaluations based on stereotyped or

biased thinking. *See id.* at 9. Consequently, "[s]ubmitting the issue of discriminatory intent to a jury on this record would amount to nothing more than an invitation to speculate." *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 467–68 (1st Cir.1996); *see also Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40 (1st Cir.2002)(holding that slight suggestion of pretext presented in case absent other evidence of discrimination cannot meet plaintiff's burden on summary judgment). The MBTA's motion for summary judgment will be allowed.

## IV. *The Union's Motion for Summary Judgment (Docket No. 42)*

### A. Legal Standard for Title VII Discrimination Claims against Unions

 Under Title VII, Unions, like employers, may not discriminate based upon an impermissible consideration. 42 U.S.C. § 2000e–2(c)(1); *see McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 285, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Although the parties cite no authority binding on this Court (and this Court has found none) with respect to how the burden shifting framework operates in a case against a union (as opposed to a case against an employer), there is no logical reason to employ a different framework. By analogy to cases against an employer, a prima facie case against a union requires the plaintiff to demonstrate that 1) the plaintiff is a member of a protected class, 2) the union failed to pursue a grievance filed by the plaintiff and 3) there is some indication that the union's actions were motivated by discriminatory animus. *See Rainey v. Town of Warren,* 80 F.Supp.2d 5, 15–16 (D.R.I.2000). Some courts have also required plaintiffs at the prima facie case stage to demonstrate that the employer violated the CBA and that the union violated its duty of fair representation by not pursuing the grievance. *See York v. AT & T Co.,* 95 F.3d 948, 955–56 (10th Cir.1996); *Morales v. UFCW Local 1776 AFL–CIO,* 2005 WL 1266591, *7 (E.D.Pa.) (unpublished). Once the plaintiff has satisfied its burden in demonstrating a prima facie case, the burden of production then shifts to the union to demonstrate a legitimate, non-discriminatory reason for its action (or inaction) and if that burden is satisfied, the plaintiff must then offer evidence that the reason proffered was pretextual and hides a discriminatory motivation.

### B. Analysis

In Local 589's motion for summary judgment, it argues that 1) Casamento cannot satisfy her initial burden because the rescission of the job posting was a valid exercise of the inherent managerial rights of employers, 2) Local 589 has satisfied its burden at the second stage because Mastrocola's decision that Casamento's grievance lacked merit was a legitimate, non-discriminatory reason for declining to pursue her claim and 3) Casamento cannot satisfy her burden at the third stage, i.e., that Local 589's stated reason for not pursuing the claim was pretextual.

Casamento contends that she can establish a prima facie case against Local 589. She argues in her opposition to the motion for summary judgment that when the MBTA discriminated against her by placing Schlueter in the Supervisor position it violated Article 121 of the CBA which prohibits discrimination based on gender. Local 589 refused to pursue her grievance thereby allegedly breaching its duty of fair representation. Casamento contends that Local 589 allowed a male member of the union to continue in the Supervisor position and did not pursue her grievance and

that such action indicates that Local 589 had a discriminatory motive.

It is undisputed that Casamento is a member of a protected class for whom the union did not pursue a grievance. The fact that Local 589's failure to pursue the grievance arguably allowed a male member of the union to continue in a position that had been supposedly "rescinded" could suggest discriminatory animus. If Casamento is required to show that her employer, the MBTA, violated the CBA as part of her prima facie case, her claim fails at the prima facie stage because, as discussed above, Casamento's discrimination claim against the MBTA is deficient as a matter of law. But even if Casamento had established a prima facie case against Local 589, her claim against the Union still fails for the reasons that follow.

 Local 589 proffers several persuasive, non-discriminatory reasons for not pursuing Casamento's claim. At the time that Casamento filed her grievance, Mastrocola told her that it lacked merit. He has submitted an affidavit stating that he explained to Casamento that the supervisory position was not one within Local 589's Collective Bargaining Unit or subject to the terms of its CBA and that (as he confirmed) the MBTA had the right to rescind position postings under Massachusetts law as part of its discretion in making decisions about staffing levels. Presentation of evidence for such a legitimate, non-discriminatory reason satisfies Local 589's burden of production.

 Furthermore, Local 589 contends that Casamento cannot meet her burden at the final stage because she cannot establish that Local 589's reason for not pursuing the grievance was pretextual. The Union points out that Casamento's only suggestion that it had a discriminatory motive comes from her complaint in which she alleges: "Local 589 has a history of treating its male members more favorably than its female members." Local 589 responds that her insufficient support for such an allegation comes from a conversation she had with another employee regarding limits imposed on a former female Union Steward.

In her memorandum and statement of facts, Casamento offers no additional information to demonstrate that the Union's reason was pretextual or designed to disguise discriminatory intent. She relies instead on her argument that the Union has not satisfied its burden of producing evidence that its failure to pursue her grievance was for a legitimate, non-discriminatory reason. The Court disagrees. The Union has presented such a legitimate, non-discriminatory reason and, consequently, summary judgment is appropriate. Casamento has failed to satisfy her burden of presenting a genuine issue of material fact with respect to whether the reason offered by the Union for declining to pursue her grievance was pretext hiding a discriminatory motive. Local 589's motion for summary judgment will be allowed.

## ORDER

In accordance with the foregoing, the motions for summary judgment of defendants the MBTA (Docket No. 46) and Local 589 (Docket No. 42) will be ALLOWED.

**So ordered.**